UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRY LEE TETTERTON,<br><br>    Petitioner,<br><br>  v.<br><br>WARDEN, FCI FORT DIX,<br><br>    Respondent. | Civil Action<br>No. 23-1394 (CPO)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution ("FCI") Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. For the reasons stated in this Opinion, the Court will dismiss Petitioner's claim that seeks an order to return him to home confinement for lack of jurisdiction. Additionally, assuming *arguendo* that the Court has jurisdiction to review decisions regarding home confinement for abuse of discretion, the Court will dismiss Petitioner's abuse of discretion claim without prejudice for his failure to exhaust his administrative remedies.

## I.    BACKGROUND[1]

This case arises from Petitioner's home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). According to Petitioner, the Bureau of Prisons ("BOP") transferred him to home confinement pursuant to the CARES Act, on May 19, 2020. (ECF No. 1-1, at 3.) He remained in home confinement for about seven months, until January 13, 2021, when the BOP returned Petitioner to

---

[1] The Court will accept as true the factual allegations in the Petition for the purposes of this Opinion only. The Court has made no findings as to the veracity of Petitioner's allegations.

a halfway house and then to two regional jails. (*Id*. at 4–6.) Petitioner did not receive a hearing before the BOP revoked his home confinement. (ECF No. 1-1, at 7.) After at least six weeks, the BOP transferred him to FCI Petersburg. (*Id*. at 4–6.) The BOP retrieved Petitioner from home confinement because he had tested positive for opioids on two occasions. (*Id.* at 4.) Petitioner contends that he tested positive because he had taken medicated cough syrup that did not indicate that it contained narcotics. (*Id.* at 3–4.)

On May 18, 2021, the BOP informed Petitioner for the first time that he had been found guilty of committing two prohibited acts under BOP Code 112 for the "[u]se of any narcotics . . . not prescribed for the individual by the medical staff." (*Id.* at 6.) A disciplinary hearing officer ("DHO") apparently conducted these hearings on January 4, 2021, and January 11, 2021, without Petitioner. (*Id*.) Petitioner contends that he was not notified of his rights regarding those hearings and did not receive an opportunity to present a defense. (*Id.* at 5–7.) Although Petitioner received other sanctions for those two violations, he never received "notice of the BOP's decision to revoke his home confinement," or an "explanation [for] the basis of the revocation [or] the evidence relied upon in reaching that decision." (*Id.* at 6.)

Petitioner contends that he was unable to exhaust his administrative remedies as to the DHO decisions because he received notice of those decisions long after the time to appeal had expired. (ECF No. 1-1, at 7.) Petitioner did, however, initiate the administrative remedy process and filed a BP-9 in June of 2022, seeking his return to home confinement, but received no response. (*Id*.) In October of 2022, he submitted a BP-10 to the BOP's regional director, arguing that he did not receive a hearing prior to the revocation of his home confinement. (*Id*.) Petitioner did not receive a response from the regional director. (*Id*.) Petitioner states that he has not yet filed a BP-11 with the BOP's central office. (*Id*.)

In March of 2023, Petitioner filed the instant Petition under 28 U.S.C. § 2241, to challenge the BOP's decision to revoke home confinement, arguing that the BOP violated his due process rights under the Fifth Amendment.  In terms of relief, Petitioner asks the Court to order the BOP to return him to home confinement, and order that the BOP provide him with a hearing prior to any attempts to return him to prison thereafter. (ECF No. 1, at 8.)  After reviewing the Petition, the Court ordered a limited answer on the issue of jurisdiction and whether Petitioner had a liberty interest in CARES Act home confinement placement. (ECF No. 2.)  Respondent filed a Limited Answer opposing relief, (ECF No. 4), and Petitioner filed a Reply, (ECF No. 5).

In May of 2023, Petitioner filed a motion for a temporary restraining order and for a preliminary injunction. (ECF No. 6.)  Petitioner sought an order from the Court to direct the BOP to return him to home confinement, pending a final ruling on the Petition. (ECF No. 7, at 1.)  The Court denied his motion with prejudice as the Court lacked jurisdiction to grant Petitioner's request. (*Id.* at 1–3.)

## II.     STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).  If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v.*

*Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

### III. DISCUSSION

#### A. Jurisdiction

Petitioner contends that the BOP revoked his home confinement in January of 2021, without a hearing, in violation of the Due Process Clause of the Fifth Amendment. (ECF No. 1, at 4–16.) In response, the Government contends that this Court lacks jurisdiction to grant Petitioner home confinement under the CARES Act, and that in any event, Petitioner's due process claim lacks merit.

First, to the extent Petitioner seeks a direct order for home confinement, this Court "has no authority to issue such an order." *United States v. Farlow*, No. 18-44, 2021 WL 1207485, at *4 (D.N.J. Mar. 30, 2021); *see also e.g.*, *Davey v. Warden Lamine N'Diaye*, No. 22-2254, 2023 WL 2570221, at *7 (D.N.J. Mar. 20, 2023); *Perri v. Warden of FCI Fort Dix*, No. 20-13711, 2023 WL 314312, at *3 (D.N.J. Jan. 19, 2023); *Hussain v. Thompson*, No. 21-1635, 2021 WL 5298898, at *3–4 (M.D. Pa. Nov. 15, 2021), *aff'd sub nom. Hussain v. Warden Allenwood FCI*, No. 22-1604, 2023 WL 2643619 (3d Cir. Mar. 27, 2023). Petitioner's request for home confinement falls under 18 U.S.C. § 3624(c)(2), as amended by § 12003(b)(2) of the CARES Act. *Farlow*, No. 18-44, 2021 WL 1207485, at *4.

"The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP." *Id*. (citing *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020)); *Hussain*, 2021 WL 5298898, at *3–4 (citing cases); *see also* 18 U.S.C. § 3621(b) (stating that "a designation

of a place of imprisonment under this subsection is not reviewable by any court"); *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (finding that the BOP has the sole authority to place a prisoner on home confinement) *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]hether to transfer an inmate to home confinement is a decision within the exclusive discretion of the BOP.").

In other words, prisoners cannot use "§ 2241 as an end-run around the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the federal CARES Act, which vests in the Director of the Bureau of Prisons discretion to transfer an inmate to home confinement." *Olson v. Warden Schuylkill FCI*, No. 21-2436, 2022 WL 260060, at *2 (3d Cir. Jan. 27, 2022). Consequently, this Court lacks jurisdiction to issue an order for home confinement "under 18 U.S.C.§ 3624(c)(2) or its amendments under the CARES Act." *Farlow*, 2021 WL 1207485, at *4; *see also Davey*, 2023 WL 2570221, at *7 (finding that this Court "lacks jurisdiction to issue an order for home confinement under . . . the CARES Act"); *Rodriguez-Francisco v. United States*, No. 21-1180, 2023 WL 2089256, at *1 (M.D. Pa. Feb. 17, 2023) (same); *Perri*, 2023 WL 314312, at *3 (same). Accordingly, the Court will dismiss Petitioner's claim that seeks an order to return him to home confinement under the CARES Act, for lack of jurisdiction.

In his Reply, Petitioner disclaims[2] the plain language of his Petition, and now argues that he "has not asked this Court to order the BOP to place him on CARES Act home confinement," but rather to "order the BOP to provide him a hearing *before* removing him from home

---

[2] The Court emphasizes that in his Petition, Petitioner specifically asked the Court to "[d]irect the BOP to return [him] on CARES Act home confinement," and to "order the BOP to restore [him] to CARES Act home confinement." (ECF No. 1, at 8; ECF No. 1-1, at 16.)   Petitioner appears to have changed course, after realizing that this Court "is no more able to order [home confinement] than to order the Warden to surrender his car keys." (ECF No. 5, at 8.)

confinement." (ECF No. 5, at 6, 8 (emphasis added).) The Court will construe Petitioner as arguing that although the Court cannot order the BOP to place him into home confinement, the Court can review the decision regarding home confinement for abuse of discretion.[3] Effectively, Petitioner argues that the BOP abused its discretion by revoking home confinement, without affording him due process. As the Court intends to deny this claim on other grounds, and for sake of efficiency, the Court will excuse the impropriety of Petitioner raising this claim for the first time in his Reply.

In this Circuit, after concluding that they were unable to grant home confinement under the CARES Act, many courts have held that the BOP's decisions on that issue are "not reviewable by any court." *E.g.*, *Perri*, 2023 WL 314312, at *3 (finding that Petitioner failed "to demonstrate that this Court has jurisdiction under § 2241 to review a decision denying home confinement under the CARES Act"); *see also Davey*, 2023 WL 2570221, at *7; *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *4–5 (M.D. Pa. Jan. 4, 2022) (holding that because the CARES Act "does not provide federal courts with jurisdiction to direct or grant such relief . . . the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is 'not reviewable by any court.'"); *Adams v. Trate*, No. 20-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 14, 2020) (citing cases); *United States v. Mathews*, No. 86-00197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020).

In contrast, some courts have held that although a court "cannot review . . . [a] challenge to the BOP's decision under the CARES Act, the Court may assess 'whether the BOP abused its discretion.'" *Collins v. Bradley*, No. 20-2230, 2021 WL 4318027, at *4 (M.D. Pa. Sept. 23, 2021)

---

[3] Under this theory, as the Court cannot order the BOP to place Petitioner in home confinement, if the BOP abused its discretion, it appears that the only relief available would be to order the BOP to reassess Petitioner's eligibility for home confinement. *Perri*, 2023 WL 314312, at *5.

(quoting *Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012)), *aff'd sub nom. Collins v. Warden Canaan FPC*, No. 21-2878, 2022 WL 2752536 (3d Cir. July 14, 2022); *see also Holton v. Sage*, No. 22-0212, 2022 WL 3051838, at *2 (M.D. Pa. July 7, 2022) ("While the Court cannot address the BOP's decision to deny Petitioner his release under the CARES Act, the Court can act if the BOP abused its discretion."). Petitioner suggests that the Court should accept the latter line of cases, which relies on *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990), and its progeny. (ECF No. 5, at 5); *United States v. Allen*, 124 F. App'x. 719, 721 (3d Cir. 2005). This Court disagrees.

Generally, this Court has jurisdiction under § 2241 to hear claims that challenge "the fact or duration" of one's sentence and require one's sooner release, or the "execution" of one's sentence. *E.g.*, *Cardona v. Bledsoe*, 681 F.3d 533, 536 (3d Cir. 2012); *Leamer v. Fauver*, 288 F.3d 532, 540–41, 544 (3d Cir. 2002). This Court finds that *Keohane* and its progeny are distinguishable because they challenge a BOP decision which affects the duration of a prisoner's sentence. *Keohane*, 921 F.2d at 477; *Allen*, 124 F. App'x. at 721. In *Keohane*, a state court had intended a petitioner's state sentence to run concurrently with his federal sentence, and he had spent a substantial amount of time in a state prison. *Keohane*, 921 F.2d at 477. The BOP, however, did not designate the state prison as the place of confinement for his federal sentence. *Id*. Consequently, the petitioner sought a *nunc pro tunc* designation to honor the state court's desire to have his sentences run concurrently, rather than consecutively. *Id*. Such a designation would have had the effect of dramatically reducing the petitioner's prison time. *Id*. In contrast, the home confinement decision in this case does not affect the duration of Petitioner's sentence, nor does it conflict with the sentencing court's recommendations.

Recently, in an unpublished case, the Third Circuit held that a district court was "arguably correct that it could consider whether the BOP abused its discretion," in connection with a CARES

7

Act home confinement decision. *Hussain*, 2023 WL 2643619, at *2.  The *Hussain* Court relied on *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 243–44 (3d Cir. 2005), in which the Third Circuit held that courts have jurisdiction under § 2241 to hear challenges to community correction center ("CCC") placement decisions, as they affect the "execution" of one's sentence, even though they do not affect the fact or duration of that sentence. *See also Vasquez*, 684 F.3d at 434.  In reaching that conclusion, the Third Circuit reasoned that residential reentry is more than a "garden variety prison transfer" and that serving a sentence in a CCC "is very different from carrying out a sentence in an ordinary penal institution."  *Woodall*, 432 F.3d at 243.

In *Cardona v. Bledsoe*, 681 F.3d 533, 536 (3d Cir. 2012), however, the Third Circuit appeared to narrow *Woodall*, explaining that "Woodall was challenging the inconsistency between the sentencing court's recommendation and [the] BOP's refusal to abide by that recommendation," and therefore, involved the "execution of his sentence."  The Court defined "execution" as "putting into effect" or "carrying out" specific instructions in the sentencing court's judgment. *Cardona*, 681 F.3d at 536–37.  As a result, the Court explained that Woodall's claim was reviewable under § 2241 because it argued that the BOP was not "carrying out" his sentence according to the sentencing court's recommendation. *Id.* at 536 (quoting *Woodall*, 432 F.3d at 243).

In contrast, in the present case, the BOP's home confinement decisions affect only *where* and under what circumstances Petitioner will serve his sentence, rather than the "fact or duration" of his sentence. *Leamer*, 288 F.3d at 540–41, 544.  Nor do they affect the "execution" of his sentence, as the BOP's decisions on home confinement do not impact or conflict with his sentencing court's judgment or recommendations. *Cardona*, 681 F.3d at 536–37.  Stated differently, the BOP's CARES Act home confinement decisions cannot conflict with Petitioner's sentencing judgment because he was sentenced prior to the COVID-19 pandemic and the

enactment of the CARES Act. (*See* ECF No. 1-1, at 1 (indicating that Petitioner was convicted in 2007).)

In light of the above, this Court is inclined to conclude that Petitioner has failed to meet his burden[4] to demonstrate that this Court has jurisdiction under § 2241 to review home confinement decisions under the CARES Act.

### B. Exhaustion

Nevertheless, assuming *arguendo* that this Court has jurisdiction to hear Petitioner's abuse of discretion claim, and in turn, his due process argument, the Court will dismiss this claim for Petitioner's failure to exhaust his administrative remedies. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *E.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).

Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62; *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Nevertheless, exhaustion is not required where it would not promote these goals, such as where exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is

---

[4] Petitioner "has the burden of persuasion to convince the court it has jurisdiction." *Goodchild v. Ortiz*, No. 21-790, 2021 WL 3914300, at *13 (D.N.J. Sept. 1, 2021) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

clearly shown to be inadequate to prevent irreparable harm" *Lyons*, 840 F.2d at 205; *see also, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility).

To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.*

With those principles in mind, Petitioner concedes that he has not exhausted his administrative remedies. (ECF No. 1-1, at 7.) Petitioner states that he initiated the administrative remedy process as to the home confinement issue on July 7, 2022, and submitted a BP-9 and BP-10, but not a BP-11. (*Id.* at 7–8.) Petitioner argues that the Court should excuse his failure to exhaust because: (1) the administrative remedy process *could* take too long to complete, and (2) requiring exhaustion could subject him to "irreparable harm," because the BOP allegedly loses its authority to place him in home confinement on May 11, 2023. (*Id.* at 8.) Petitioner does not specify the "harm" at issue, but the Court will construe the harm as his continued incarceration in prison. (*Id.*)

10

Turning to Petitioner's first argument, Petitioner argues that exhaustion would be futile because he may not complete the administrative remedy process prior to the CARES Act expiration date. (*Id*. at 7–8.) "District courts within the Third Circuit have repeatedly rejected the argument that a federal prisoner can be excused from the exhaustion requirement simply because he . . . may not finish his administrative appeal[s] before a potential habeas claim would become moot." *Bortolotti v. Knight*, No. 22-6137, 2022 WL 17959577, at *2 (D.N.J. Dec. 27, 2022); *Sutton v. Moser*, No. 19-210, 2019 WL 2743959, at *4 (W.D. Pa. July 1, 2019); *Allah v. Rechtenwald*, No. 15-267, 2016 WL 6081524, *3 (W.D. Pa. Aug. 19, 2016) (listing cases); *Rosales v. Hollingsworth*, No. 15-3840, 2015 WL 4314572, at *2 (D.N.J. July 14, 2015).

Courts have rejected these time restriction arguments because they allow prisoners to engage in the self-serving strategy of waiting until it is too late to engage in the administrative remedy process, and then argue that there is insufficient time for those remedies to run their course. *E.g.*, *Ortiz v. Zickefoose*, No. 10-6767, 2011 WL 6140741, at *4 (D.N.J. Dec. 8, 2011) (citing cases); *Velez v. Zickefoose*, 2010 WL 5186158 at *3–4 (D.N.J. Dec. 15, 2010) ("such self-serving strategy has never been rewarded by the courts with habeas relief"). Indeed, in the present case, Petitioner challenges the decision to revoke his home confinement without a hearing, an event that he was aware of at some point between January and May of 2021, when the BOP returned him to prison. (ECF No. 1-1, at 5–6.) As a result, he could have started the administrative remedy process at that point, and easily exhausted his revocation of home confinement claim[5] long before May of 2023. Critically, the BOP could simply agree with Petitioner and grant his request for relief.

---

[5] The Court is aware that challenging the DHO's decisions themselves would have had issues regarding the time to appeal those decisions, but it appears that the BOP's decision to revoke home confinement occurred separately from the DHO's decisions. (ECF No. 1-1, at 6 (implying that the DHO's decision did not address the issue of home confinement).)

11

Further, "Petitioner's case fits squarely within the parameters of the purposes of exhaustion." *Cf. Furando v. Ortiz*, No. 20-3739, 2020 WL 3264161, at *3 (D.N.J. June 17, 2020*)*. First, although one could infer that Petitioner's failed drug tests caused the revocation of his home confinement, Petitioner "received no written notice of the BOP's decision to revoke . . . and no explanation [for] the basis of the revocation . . . [or] the evidence relied upon in reaching that decision." (ECF No. 1-1, at 6–7.)  This lack of information shows the need for "Petitioner to attempt to resolve this at the administrative level first" and develop a factual record. *See Chaparro v. Ortiz*, No. 20-5272, 2020 WL 4251479, at *5 (D.N.J. July 24, 2020) (noting the need to develop the factual record when the BOP's efforts are in dispute).

"Second, Petitioner could potentially obtain relief from the BOP without using judicial resources." *Furando*, 2020 WL 3264161, at *3.  Petitioner simply assumes that the BOP will reject his administrative remedies, but the BOP could very well agree with Petitioner and return him to home confinement. *See Shoup v. Shultz*, No.  09-0585, 2009 WL 1544664, at *5 (D.N.J. June 2, 2009) ("Having no information as to what the decisions of these officials would be, this Court cannot find . . . [that] these decisions would be 'hypothetically illegal,' same as the Court cannot deem the exhaustion process 'futile.'").  Finally, as Petitioner is confident that the BOP has erred, the BOP should have an opportunity to correct its own errors.  Accordingly, for all those reasons, the Court finds that requiring Petitioner to exhaust his administrative remedies would promote the goals of exhaustion, and that exhaustion is not futile in this case.

As to Petitioner's second argument, that his continued incarceration will subject him to "irreparable harm," this Court disagrees.  The risk of irreparable harm requires a clear showing of immediate irreparable injury or a presently existing actual threat. *Douvos v. Quintana*, 382 F. App'x 119, 122 (3d Cir. 2009); *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351,

359 (3d Cir. 1980). Without more,[6] in analogous situations, courts have rejected the notion that a prisoner will "suffer irreparable injury if he is denied early release or release to a halfway house." *Douvos*, 382 F. App'x at 122; *United States v. Knight*, No. 08-141-06, 2017 WL 75575, at *3 (M.D. Pa. Jan. 9, 2017) (citing *Kotz v. Lappin*, 515 F. Supp. 2d 143, 152 (D.D.C. 2007) ("Without showing that his incarceration is wrongful, the court is loathe to declare that the [prisoner] would suffer 'extreme or very serious damage' by serving the remainder of a properly-imposed sentence.")). As Petitioner does not allege that he faces any threat of immediate injury or other harm, the Court finds that he has failed to demonstrate that the BOP's administrative remedy program is "clearly . . . inadequate to prevent [an] irreparable harm." *Lyons*, 840 F.2d at 205.

In his Petition, Petitioner relies on *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005), where the Eastern District of New York observed that "[w]ere Pimentel required to pursue administrative remedies prior to bringing this action, he would likely be done serving much, if not all of his entire sentence[,] such that his request would become moot." Petitioner argues that this Court should similarly excuse his failure to exhaust. (ECF No. 1-1, at 10.)

This Court disagrees. In *Pimentel*, the court did not excuse the inmate's failure to exhaust because of the time restriction issue. *Pimentel*, 367 F. Supp. 2d at 371. As that court explained, "[t]he fact that Pimentel did not file the instant petition until the eve of his final six months in custody, *does not* of course, compel this court to waive the exhaustion of remedies requirement for fear that Pimentel would suffer imminent harm." *Id*. at 371 n.6 (emphasis added). Rather, the

---

[6] For example, if Petitioner faced a specific threat of violence, his continued incarceration could constitute a risk of irreparable harm. Petitioner's filings, however, do not allege that he is in any present danger. (ECF Nos. 1, 5); *see Douvos*, 382 F. App'x at 122 (concluding that the Petitioner failed to demonstrate that his continued incarceration presented a risk of irreparable harm since, "he has already served, apparently without serious incident, four years of his five-year sentence").

13

court excused the inmate's failure to exhaust because, pursuant to a statutory change, "the BOP [had] already categorically exercised its discretion to deny Pimentel the relief he seeks." *Id*.

In contrast, in the present case, Petitioner is not "challenging the legality of BOP regulations or presenting an issue of statutory construction that might justify excusing him from the exhaustion requirement." *E.g.*, *Sutton*, 2019 WL 2743959, at *4; *see also Wells v. Spaulding*, No. 22-1551, 2022 WL 17228665, at *2 (M.D. Pa. Nov. 23, 2022); *Bradley v. Spaulding*, No. 20-2294, 2021 WL 1964598, at *2 (M.D. Pa. May 17, 2021). Rather, Petitioner argues that the statutes and regulations at issue are valid, but that for unclear reasons, the BOP has failed to comply with them. (*See generally*, ECF No. 1-1.)

Nor does the BOP's CARES Act decision "clearly and unambiguously violate . . . [Petitioner's] constitutional rights," so as to excuse exhaustion. *Lyons*, 840 F.2d at 205. To state a procedural due process claim under the Fifth Amendment, a petitioner must demonstrate that: (1) he was deprived of an interest that is encompassed within the Fifth Amendment's protection of "life, liberty, or property," and (2) that the procedures available to him did not provide "due process of law." U.S. Const. amend. V; *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 191 (D.N.J. 2021). Generally, due process requires at least the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333; *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002). "Before any process is due under the Fifth Amendment, a claimant must demonstrate that there has been a deprivation of an interest in life, liberty, or property." *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001).

In this Circuit, the case law regarding due process and CARES Act home confinement is sparse. The courts that have addressed the matter have held that prisoners do not have a liberty interest in CARES Act home confinement, and therefore cannot state a due process claim. *Shah v.*

*Warden, FCI Fort Dix*, No. 22-6306, 2023 WL 1794891, at *2 (D.N.J. Feb. 7, 2023); *Coburn, v. Spaulding*, No. 20-01389, 2021 WL 3026851, at *6 (M.D. Pa. June 15, 2021), *report and recommendation adopted sub nom. Coburn v. Spaulding*, 2021 WL 2678706 (June 30, 2021). Courts throughout the country have arrived at similar conclusions. *See, e.g.*, *Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023); *Myers v. Ashland*, No. 22-34, 2022 WL 17573141, at *2 (E.D. Ky. Dec. 9, 2022); *Holt v. Warden*, 539 F. Supp. 3d 1005, 1008-09 (D.S.D. 2021); *United States v. Rogers*, No. 15-58, 2020 WL 4086372, at *2 (W.D. La. July 20, 2020); *Poe v. Zook*, No. 20-101, 2020 WL 6947344, at *2 (N.D. Tex. June 18, 2020).

With regard to home confinement cases prior to the CARES Act, courts in this Circuit have similarly held that prisoners have no liberty interest in being placed in home confinement. *See, e.g.*, *Kaiser v. Hollingsworth*, No. 16-1288, 2016 WL 6246308, at *4 (D.N.J. Oct. 25, 2016); *Romero v. Meeks*, No. 14-11, 2014 WL 4796579, at *8 (W.D. Pa. Sept. 26, 2014); *Rivera v. Schultz*, No. 09-6133, 2010 WL 4366122, at *3 (D.N.J. Oct. 27, 2010).

In his Reply, Petitioner argues that his circumstances require a different analysis. (ECF No. 5, at 8–14.) He argues that because he enjoyed the benefits of home confinement, its revocation without a hearing violated his rights. (*Id.*) In other words, Petitioner argues that the revocation violated his liberty interest in being free from the arbitrary revocation of his home confinement. (*Id.*) While the BOP's actions in this case raise serious questions regarding its decision and Petitioner's argument is innovative, "there is no controlling authority that answers the precise question of whether placement in home confinement pursuant to the CARES Act creates a liberty interest that triggers due process protections." *Cardoza v. Pullen*, No. 22-00591, 2022 WL 3212408, at *11, 14 (D. Conn. Aug. 9, 2022).

15

Indeed, the few courts around the country that have answered that question have arrived at different conclusions. *Compare Freeman v. Pullen*, No. 22-1567, 2023 WL 2329526, at *8 (D. Conn. Mar. 2, 2023) (finding that the petitioner "had a liberty interest in being free from the arbitrary revocation of her home confinement"); *Tompkins v. Pullen*, No. 22-339, 2022 WL 3212368, at *11 (D. Conn. Aug. 9, 2022) (same), *with*, *Triplett v. FCI Herlong*, *Warden*, No. 22-83, 2023 WL 2760829, at *3 (E.D. Cal. Apr. 3, 2023) (finding that the petitioner did not have a liberty interest in being free from arbitrary revocation because the BOP had the discretion to revoke home confinement); *Cardoza*, 2022 WL 3212408, at *11–14 (finding that no liberty interest existed because there was no sign in the petition that the CARES Act included "an implicit promise of continued liberty absent violation of conditions"); *Touizer v. Att'y Gen. of United States*, No. 20-25169, 2021 WL 371593, at *4 (S.D. Fla. Feb. 3, 2021) (finding no liberty interest because the BOP had discretion to revoke home confinement), *aff'd sub nom. Touizer v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618 (11th Cir. Aug. 27, 2021).

Against this backdrop, this Court cannot conclude that the decision to revoke Petitioner's home confinement without a hearing, "clearly and unambiguously violate[d] . . . [Petitioner's] constitutional rights." *Lyons*, 840 F.2d at 205. Taken together, Petitioner has not shown that exhaustion would be futile, that requiring exhaustion would subject him to irreparable harm, or that the BOP's actions clearly and unambiguously violated a constitutional right. Accordingly, the Court will not excuse Petitioner's failure to exhaust and will dismiss his abuse of discretion claim for failure to exhaust his administrative remedies.

Of course, if Petitioner properly exhausts his administrative remedies, which would likely be sooner rather than later, given that he has already instituted such proceedings, he may then seek to challenge the BOP's decision and raise his abuse of discretion based due process arguments at

that time. The Court would expect that through the administrative process, the BOP would develop a detailed factual record to support its actions to permit the Court to do a sufficient review for abuse of discretion.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss with prejudice Petitioner's claim that seeks an order for home confinement for lack of jurisdiction. The Court will dismiss without prejudice Petitioner's abuse of discretion based claim, for his failure to exhaust his administrative remedies. An appropriate Order follows.


DATED:  June 16, 2023

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**